UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| TOXICS ACTION CENTER, INC., and <br> CONSERVATION LAW FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> CASELLA WASTE SYSTEMS, INC., and NORTH COUNTRY ENVIRONMENTAL SERVICES, INC., <br><br> Defendants. | Case No. 1:18-cv-00393-PB |

## DECLARATION OF SEAN MAHONEY

Pursuant to 28 U.S.C. § 1746, I, Sean Mahoney, declare the following based upon my personal knowledge:

1. I am Executive Vice President of Conservation Law Foundation ("CLF") and director of CLF's Maine Advocacy Center. My work address is 53 Exchange Street, Suite 200, Portland, Maine.

2. I have worked for CLF since 2007. In my position as Executive Vice President, I oversee the development and implementation of CLF's advocacy across the New England region we serve, including but not limited to New Hampshire. In my capacity as director of CLF's Maine Advocacy Center, I oversee and directly engage in CLF advocacy, including legal advocacy, taking place in Maine.

3. CLF is a non-profit environmental advocacy organization. Our mission is to protect New England's environment for the benefit of all people, using the law, science and the market

    to create solutions that preserve our natural resources, build healthy communities, and sustain a vibrant economy.

4. I am an attorney in good standing in the State of Maine and am also licensed to practice law in California. Most CLF advocates also are attorneys, licensed at a minimum to practice law in their respective state.

5. CLF frequently engages in legal advocacy, including litigation in state and federal courts, to achieve its mission.

6. With respect to this lawsuit, attorneys representing CLF researched the legal issues and reviewed documents to determine who the proper defendants would be, and they determined that the facts supported including Casella Waste Systems, Inc. as a defendant.

7. The strategic prioritization, development and implementation of legal advocacy, including individual cases, is an essential tool for CLF in determining how best to deploy its resources, achieve programmatic objectives, engage members, and fulfill its organizational mission.

8. Because it includes litigation and other adjudicative or quasi-adjudicative proceedings, a substantial amount of CLF's legal advocacy is adversarial. It would have a chilling effect on CLF's ability to associate, and to engage in internal processes and activities that are core to its mission, if during the course of litigation CLF were subject to discovery on matters related to its development and implementation of advocacy priorities, strategies and cases. If CLF were required to disclose its litigation strategies, including the process by which it decided to sue Casella Waste Systems, it would hinder our ability to openly communicate internally about legal advocacy strategies and litigation tactics.

9. CLF's internal strategic planning also involves communication decisions, including when to hold public events and press conferences, and the content of those events and conferences. This includes decisions about press conferences related to this case. It would have a chilling effect on CLF's ability to engage with the public and associate with its members, as well as to engage in internal planning and decision making, if discussions regarding these decisions and strategies were subject to disclosure.

10. CLF attorneys play a significant role in the development and implementation of advocacy priorities, strategies and cases, as well as in media strategies. CLF attorneys have an attorney-client relationship with CLF, meaning that their work, internal communications, and participation and advice relative to the development and implementation of advocacy priorities, strategies, cases, and media-related decision-making are subject to attorney-client privilege. It would severely undermine the right and ability of CLF to achieve its organizational mission if information and communications subject to attorney-client privilege and other privileges, such as the attorney work product privilege, were not protected.

11. CLF attorneys and advocates often communicate with members of the public, including individuals who are or become CLF members, about environmental problems in their communities. Such communications are essential to CLF's ability to learn about environmental problems warranting action to protect the environment and public health and to achieving CLF's organizational mission. If communications between CLF advocates and CLF members and other community members were subject to discovery, it would have a chilling effect on the right of association and on the willingness of

4

concerned individuals to share information and would greatly undermine the right and ability of CLF to engage in its work.

I declare under penalty of perjury, this 9th day of October, 2018, that the foregoing is true and correct.

                                                                     */s/ Sean Mahoney*

                                                                     Sean Mahoney