UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

—————————————————————

TOXICS ACTION CENTER, INC., and
CONSERVATION LAW FOUNDATION,                )
)
)
)
Plaintiffs,                )
)
v.                )
)
CASELLA WASTE SYSTEMS, INC., and NORTH
COUNTRY ENVIRONMENTAL SERVICES,
INC.,                )
)
Defendants.                )

Case No. 1:18-cv-00393-PB

—————————————————————

## <u>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER</u>

**I.**      **Plaintiffs' Declarations are Sufficient to Establish a *Prima Facie* Showing of Infringement of First Amendment Rights**

Defendants seem to suggest that, absent a clear threat of imprisonment or physical harm such as that faced by Southern civil rights workers in the 1950s or persecuted sexual minorities in present-day Uganda, a *prima facie* case for potential infringement of First Amendment rights cannot be made.  This is not the law.

In their Objection to Plaintiffs' Motion for a Protective Order (ECF #65) ("Obj."), Defendants argue that Plaintiffs' declarations do not establish a *prima facie* showing of a First Amendment infringement, and are therefore insufficient to shift the burden to Defendants to show both a compelling need for discovery and that there is no less restrictive means for securing it.  Obj. at 10-11.  Defendants reach this result by mischaracterizing the case law they do cite, and by ignoring the line of environmental cases cited by Plaintiffs that support the sufficiency of the declarations submitted here.

The First Circuit's decision in *U.S. v. Comley*, 890 F.2d 539 (1st Cir. 1989), does not support Defendants' argument. The government subpoena at issue in *Comley*, unlike Defendants' proposed deposition questioning here, did not seek the disclosure of the identities of other persons. *Id.* at 544. That distinction, combined with the general nature of the allegations of harassment or harm, reduced "the magnitude of the first amendment concerns" in the court's eyes. *Id.* Even so, the *Comley* court did *not* hold that plaintiff failed to establish a *prima facie* infringement. Rather, the court based its rejection of the First Amendment privilege claim on the second prong of the analysis, noting that "[w]e reject the challenge because of our conclusion that the government has adequately shown both a compelling interest in obtaining the material sought and that no significantly less restrictive alternatives exist." *Id.* at 545 (narrowly drawn subpoena was only way to obtain information about release of nuclear plant secrets).

Similarly, *Motor Fuel Temperatures Sales Practices Litigation*, 641 F.3d 470 (10th Cir. 2011), does *not* hold that an affidavit is insufficient to establish the potential chilling effect necessary to meet the *prima facie* burden. *See* Obj. at 11. Rather, it was the *absence* of a sworn affidavit that was the problem: a party's "equivocal," "unsworn statement" was found to be "better suited to a burdensome[ness], not a First Amendment, challenge." *See* 641 F.3d at 490-91. Prior to reaching this conclusion, the Tenth Circuit surveyed relevant precedent and specifically acknowledged that affidavits alone are sufficient to meet the *prima facie* burden. *See Id.* at 491.

Plaintiffs' declarations here are sufficient to shift the burden. Plaintiffs' declarations allege, among other things, that the requested disclosures will "severely limit the vital exchange of information" among association employees, members and partners. (*See* Kasper Decl. ¶¶ 10-11). A Plaintiff staff person describes the public harassment and threats experienced by group

members during past campaigns. (*See, e.g.* Kasper Decl. ¶ 6).  The declaration of a Plaintiff member describes the harassment and threats inflicted upon her by Defendants' employees as a result of her involvement in the landfill controversy.  (*See* Bryant Decl. ¶¶ 8-12).  It also reflects her concern that others will not want to work with the Plaintiff groups if doing so will open them up to such behavior.  (*See* Bryant Decl. ¶ 14).

Defendants fail to distinguish the line of cases cited by Plaintiffs demonstrating the sufficiency of their declarations and, in a footnote, appear to tacitly acknowledge their import. *See* Obj. at 13 n. 4.  In those cases, declarations analogous to those submitted here satisfied the affected parties' *prima facie* burden.  *See Sierra Club v. BNSF Railway Co.*, No. 13-cv-0967-JCC, 2016 WL 4528452, at *2-3 (W.D. Wash. Aug. 30, 2016) (declaration stated "discovery would severely chill the free and necessary exchange of information" within the organization by negatively impacting NRDC's staff members' ability to talk "openly among themselves about their work"); *Sierra Club v. Union Elec. Co.*, No. 4:14-cv-00408 (AGF), 2015 WL 9583394, at *2-3 (E.D. Mo. Dec. 31, 2015) (declarations from standing witness and environmental association officers attested to negative impact of potential disclosure and described past instances of harassment as a result of involvement in campaigns); *City of Greenville v. Syngenta Crop Prot., Inc.* (Nos. 11-mc-10, 11-mc-1031, 11-mc-1032, 2011 WL 5118601, at *8 (C.D. Ill. Oct. 27, 2011) (declarations from association members, employees and agents stated disclosure of communications would have chilling effect and could discourage member to reconsider membership).[1]

---

[1] Although Defendants suggest that the effect of the requested disclosures on the associational rights of third parties (beyond Plaintiffs' members) is immaterial, Obj. at 13, protection of the associational and privacy rights of third parties *is* relevant to the Court's decision as to whether to grant a protective order. Fed. R. Civ. P. 26(c) itself provides that a protective order may be issued "to protect a party *or person* from *annoyance, embarrassment, oppression,* or undue burden or expense" (emphasis added).  *See Seattle*

## II.        Defendants Do Not, and Cannot, Establish the Relevance of Their Requests

Defendants announce that they have "declined" – both in negotiations with Plaintiffs and in their Objection to the motion for protective order – "to engage in a debate over relevancy because it was beyond the scope of the court's order."  Obj. at 4-5.  But the lack of relevancy of the requested discovery topics is at the heart of Plaintiffs' First Amendment arguments and of their arguments under Rule 26.  A key question in the decision on permitting discovery into topics implicating associational rights is whether the interest in compelling the discovery through the court system is significant enough to overcome the First Amendment interest in protecting the right to associate on topics of public and political interest.  *Seattle Times*, 467 U.S. at 32 (information sought must further "an important or substantial" case-related purpose that is "unrelated to the suppression of expression") (citations and internal quotations omitted).  And Rule 26(b)(1) allows discovery only where the information sought "is relevant to any party's claim or defense and proportional to the needs of the case, considering …whether the burden or expense of the proposed discovery outweighs its likely benefit."

Indeed, Defendants ignore the first half of *Comley*, which turns on a showing of relevance.  The party seeking discovery must first (1) make a *prima facie* case that information in question is sought "for a proper purpose authorized by Congress," and must then (2) show "that the information sought …is reasonably relevant to [that] purpose," and that the discovery request is "not too indefinite."  *Comley,* 890 F.2d at 541.  Here, the only congressionally sanctioned purpose that Defendants can claim is that imbedded in Rule 26 – the discovery of information relevant to their defense of this lawsuit – but they have made no showing that the

_____

*Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984) (upholding protective order granted to protect First Amendment rights of association).

discovery they seek is "reasonably relevant" to any defense they may have.  The only reason they suggest for obtaining the requested information is to question Plaintiffs' motives.  *See* Obj. at 3 ("NCES and Casella maintain that plaintiffs notified them of their intent to file a citizen's suit, not because NCES was polluting the Ammonoosuc River, but because plaintiffs oppose the siting or expansion of landfills").  However, the law is clear that a citizen plaintiff's motive is irrelevant; what matters is whether the defendant is violating the Clean Water Act and whether the plaintiff has Article III standing to invoke the court's jurisdiction to address that violation. *See* Plaintiffs' Motion at 11.

Respectfully submitted,

TOXICS ACTION CENTER, INC., and
CONSERVATION LAW FOUNDATION

Dated: November 19, 2019

By their Attorneys,

 */s/ Joshua R. Kratka*
Joshua R. Kratka (MA Bar #544792)
*Admitted pro hac vice*
National Environmental Law Center
294 Washington Street, Suite 500
Boston, MA 02108
(617) 747-4304
*Attorney for Conservation Law Foundation
and Toxics Action Center*
Email: josh.kratka@nelconline.org

 */s/ David A. Nicholas*
David A. Nicholas (MA Bar #553996)
*Admitted pro hac vice*
20 Whitney Road
Newton, MA 02460
(617) 964-1548
*Attorney for Toxics Action Center*
Email: dnicholas100@gmail.com

*/s/ Thomas F. Irwin*

Thomas F. Irwin (NH Bar #11302)
Conservation Law Foundation
27 North Main Street
Concord, NH 03301
(603) 573-9139
*Attorney for Conservation Law Foundation*
Email: tirwin@clf.org

*/s/ Daniel J. Mullen*

Daniel J. Mullen (NH Bar #1830)
Ransmeier & Spellman P.C.
One Capitol Street
Concord, NH 03301
(603) 410-6643
*Attorney for Toxics Action Center*
Email: dmullen@ranspell.com