UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| TOXICS ACTION CENTER, INC., and<br>CONSERVATION LAW FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CASELLA WASTE SYSTEMS, INC., and NORTH COUNTRY ENVIRONMENTAL SERVICES, INC.,<br><br>Defendants. | Case No. 1:18-cv-00393-PB |

**SETTLEMENT AGREEMENT AND ORDER**

WHEREAS, Plaintiffs Toxics Action Center, Inc., and Conservation Law Foundation ("Plaintiffs") brought suit (the "Action") against Defendants Casella Waste Systems, Inc., and North Country Environmental Services, Inc. ("NCES") ("Defendants") (Plaintiffs and Defendants collectively, the "Parties" and each individually, a "Party") under the federal Clean Water Act, 33 U.S.C. § 1251, *et seq.* ("CWA"), for alleged violations of the CWA at Defendants' landfill and appurtenant real property ("Landfill") in Bethlehem, New Hampshire; and

WHEREAS, Defendants have denied the allegations and disputed the claims in the Action; and

WHEREAS, Plaintiffs and Defendants have negotiated a resolution of the Action in the form of this Settlement Agreement (the "Agreement"),

NOW THEREFORE, Plaintiffs and Defendants enter into this Agreement, stipulate that it constitutes the full, final, and complete resolution of the issues raised in the Action, and agree to the following:

1. <u>Definitions</u>.  For the purposes of this Agreement, the following terms shall have the following meanings:

    a. "Drainage Channel" is the approximately 370-foot long channel running from the Main Seep to the Ammonoosuc River.

    b. "Main Seep" is the groundwater seep located in the Groundwater Management Zone corresponding to sampling location S-1 in New Hampshire Groundwater Management and Release Detection Permit No. GWP-198704033.

2. <u>Mutual Release</u>.  Each Party (on behalf of itself and its respective agents, representatives, parents, affiliates, subsidiaries, shareholders, attorneys, law firms, directors, officers, employees, agents, representatives, successors, and assigns, as the case may be) (each, a "Releasing Party") releases and forever discharges the other Parties (and their respective agents, representatives, parents, affiliates, subsidiaries, shareholders, directors, officers, employees, agents, representatives, successors, and assigns, as the case may be) (each, a "Released Party") of all claims (except for those addressed under a separate and contemporaneous confidential agreement incorporated herein by reference regarding costs of litigation) that the Releasing Party made or could have made in the Action, including, without limitation, all manner of action or actions, cause or causes of action, suits, debts, damages, claims, penalties, liabilities, demands, judgments, or executions whatsoever, whether known or unknown, whether under statute or in contract, tort, or otherwise, and whether in law or in equity, that the Releasing Party ever had or has now against any Released Party arising from the subject matter of the Action.  The Parties

agree and stipulate that Conservation Law Foundation's appeal of the NCES Stage VI permit application, pending before the Waste Management Council, is not a matter "arising from the subject matter of the Action" within the meaning of this paragraph and that nothing in this Agreement has any bearing on such appeal.

3. <u>Restoration Project</u>.  In 2010, NCES performed a project to satisfy Special Condition 15 of its New Hampshire Groundwater Management and Release Detection Permit No. GWP-198704033.  The project entailed removal and disposal of sediments from the Main Seep and Drainage Channel, protection of surrounding areas during the removal work, and site restoration once sediment removal was completed.  A description of that project is contained in the November 2010 "Seep Restoration Summary Report" prepared by Sanborn, Head & Associates, Inc. (Bates-stamped NCES-004796-4933).

    a. Not later than two years after the date of this Agreement, NCES shall submit applications for all necessary permits and regulatory approvals needed to perform sediment removal and restoration work on the Main Seep and Drainage Channel (the "Second Restoration Project") that is substantially the same, in terms of scope, purpose, and effect, as the work Defendants performed in 2010 that is referenced in the preceding paragraph.

    b. Not later than one year after obtaining the necessary permits and regulatory approvals, NCES shall commence the Second Restoration Project and shall complete the Second Restoration Project within the construction season in which it was commenced.

    c. Plaintiffs waive, release, and forever discharge, as if included within the scope of paragraph 2, any claim or theory of liability in any future action brought against any Released Party, that the purpose of the Second Restoration Project is to treat groundwater

or surface water or that any work performed as part of the Second Restoration Project rendered all or any part of the Main Seep or the Drainage Channel a water treatment facility, including, without limitation, a landfill wastewater treatment system.

  d. Defendants shall, contemporaneously with their submission to any state or federal regulatory agency, provide Plaintiffs with a copy of any application, notice of intent to proceed, and post-completion report prepared in connection with the Second Restoration Project, and shall also provide Plaintiffs with a copy of any related agency objections and approvals within 15 days of receipt of same. If no such post-completion report is provided to government agencies, Defendants shall inform Plaintiffs in writing upon completion of the Second Restoration Project, and shall within 30 days of completion provide Plaintiffs with copies of the project reports provided to Defendants by contractors who performed work in connection with the Second Restoration Project. The Second Restoration Project post-completion report(s) provided to Plaintiffs shall, individually or collectively, describe the project's implementation, the volume of sediments removed, the manner of disposal of removed sediments, and other restoration work performed on the Main Seep and Drainage Channel.

  4. <u>Supplemental Environmental Project</u>.  Not later than 30 days after the date of the written agreement contemplated by this paragraph, Defendants shall pay the sum of $50,000 by electronic funds transfer or bank draft to the Ammonoosuc Conservation Trust ("ACT"), a 501(c)(3) non-profit corporation. Such payment shall be expended by ACT solely for projects designed to promote restoration, preservation, protection, and/or enhancement of water quality in the Ammonoosuc River watershed. ACT shall agree in writing, as a condition precedent of receiving any funds pursuant to this Agreement: (i) to disburse any money it receives under this

Agreement solely for the purposes described in this paragraph; (ii) not to use any money received under this Agreement for litigation or political lobbying activities; and (iii) to submit to Plaintiffs and Defendants on the first anniversary of receiving the payment described in this paragraph, and on each anniversary thereafter, a report describing how the money was spent, and certifying that the funds were used in the manner described in this Agreement, until all money is expended.

    a. Any public statement made by Defendants in any press release, in any oral or written material promoting Defendants' environmental or charitable practices or record, or in Defendants' Annual Reports, that makes reference to Defendants' payment to ACT shall include the following language: "Payments to the Ammonoosuc Conservation Trust were made pursuant to the settlement of a Clean Water Act enforcement suit brought by Community Action Works (formerly known as Toxics Action Center) and Conservation Law Foundation."

5.    <u>Enforcement</u>.  The parties stipulate that the provisions of this Agreement (including the provisions of the agreement incorporated by reference in paragraph 2) shall be enforceable by the Court upon motion by any Party.

6.    <u>General Provisions</u>.

    a. The provisions of this Agreement shall apply to and be binding upon the Parties and their respective officers, employees, successors, and assigns. Defendants' obligations under this Agreement shall not be assignable or delegable to any third party, including any third party to which Defendants transfer ownership or operation of the Landfill or of any real property between the Landfill and the Ammonoosuc River,

without the written consent of Plaintiffs, which consent Plaintiffs shall not unreasonably withhold.

 b. Defendants shall not assert any claim of confidentiality for any documents or information provided to Plaintiffs pursuant to this Agreement.  All correspondence concerning this Agreement and all documents that are submitted pursuant to this Agreement shall be addressed as follows:

  As to the Plaintiffs:

   Josh Kratka
   Email (preferred):  josh.kratka@nelconline.org
   National Environmental Law Center
   294 Washington Street, Suite 500
   Boston, MA 02108
   Telephone: (617) 747-4333

  As to the Defendants:

   Bryan K. Gould and
   Cooley A. Arroyo
   E-mail:  gouldb@cwbpa.com
      arroyoc@cwbpa.com
   Cleveland, Waters and Bass, P.A.
   Two Capital Plaza, 5th Floor
   P.O. Box 1137
   Concord, NH 03302-1137

 c. No changes, additions, modification, or amendments of this Agreement shall be effective unless they are set out in writing and agreed to by all Parties to the Agreement (except as to any changes to the designated recipients of Agreement-related correspondence set forth in paragraph 6.b, which are effective upon written notice to the Parties).

 d. The effective date of this Agreement shall be the date of its entry by the Court.

| | |
|---|---|
| January 5, 2022 | */s/ Bryan K. Gould*<br>Bryan K. Gould (NH Bar #8165)<br>Cooley A. Arroyo (NH Bar #265810)<br>Callan E. Sullivan (NH Bar #20799)<br>Cleveland, Waters and Bass, P.A.<br>Two Capital Plaza, P.O. Box 1137<br>Concord, NH 03302-1137<br>(603) 224-7761<br>*Attorneys for Casella Waste Systems, Inc. and North Country Environmental Services, Inc.*<br><br>*/s/ Joshua R. Kratka*<br>Joshua R. Kratka (MA Bar #544792)<br>National Environmental Law Center<br>294 Washington Street, Suite 500<br>Boston, MA 02108<br>(617) 747-4333<br>*Attorneys for Toxics Action Center and Conservation Law Foundation*<br><br>*/s/ Thomas F. Irwin*<br>Thomas F. Irwin (NH Bar #11302)<br>Conservation Law Foundation<br>27 North Main Street<br>Concord, NH 03301<br>(603) 573-9139<br>*Attorney for Conservation Law Foundation*<br><br>*/s/ David A. Nicholas*<br>David A. Nicholas (MA Bar #553996)<br>20 Whitney Road<br>Newton, MA 02460<br>(617) 964-1548<br>*Attorney for Toxics Action Center*<br><br>Meaghan A. Jepsen (NH Bar #266707)<br>Ransmeier & Spellman P.C<br>One Capitol Street<br>Concord, NH 03301<br>(603) 410-4913<br>*Attorney for Toxics Action Center* |

                **SO ORDERED.**

                                                                _____
                                                                United States District Court Judge

January ___, 2022

## CERTIFICATE OF SERVICE

      I hereby certify that on January 5, 2022, I filed a copy of this Settlement Agreement and Order with the Court's ECF system, which will cause an electronic notice of such filing to be sent to all counsel who have appeared in this case.

                                  */s/ Joshua R. Kratka*
                                  Joshua R. Kratka